## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **DARRICK JAMES,** | ) | |
| | | ) | |
| | **Plaintiffs,** | ) | **CIV-15**-391-D |
| **v.** | | ) | |
| | | ) | |
| 1. | **CITY OF CHOCTAW,** | ) | |
| 2. | **ROGER NELSON, in his individual** | ) | |
| | **capacity as City Manager,** | ) | |
| 3. | **RANDY JACOX, in his individual** | ) | |
| | **capacity as Assistant Public Works** | ) | |
| | **Director,** | ) | |
| 4. | **SCOTT SMITH, in his individual** | ) | |
| | **capacity as Utilities Supervisor, and** | ) | |
| 5. | **STEVE GUINN, in his individual** | ) | |
| | **capacity as Streets Supervisor,** | ) | |
| | | ) | **ATTORNEYS LIEN CLAIMED** |
| | **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Darrick James and for his Complaint against the above-named Defendants, herein alleges and states as follows:

## PARTIES

1.     The Plaintiff is Darrick James, an African American male residing in Oklahoma County, Oklahoma.

2.     The Defendants are:

a)     The City of Choctaw (hereinafter referred to as "the City"), a governmental entity doing business in Oklahoma County, Oklahoma;

b)     Defendant Roger Nelson who works for the City as the City Manager;

        c)      Defendant Randy Jacox who works for the City as the Assistant Public Works Director;

        d)      Defendant Scott Smith who works for the City as the Utilities Supervisor; and

        e)      Defendant Steve Guinn who works for the City as the Streets Supervisor.

3.      Each of the individual Defendants is/was an employee of the City of Choctaw at all times relevant hereto and acted at all times relevant hereto under the color of the authority granted to them by the City.

## JURISDICTION AND VENUE

4.      This is a cause of action arising out of Plaintiff's former employment with Defendant City.  Plaintiff asserts claims based on: race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended; retaliation for filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in violation of 42 U.S.C. 2000e-3(a);  race discrimination and retaliation in violation of 42 U.S.C. § 1981, made actionable by 42 U.S.C. § 1983; violation of his right to Equal Protection, made actionable by 42 U.S.C. § 1983; violation of his First Amendment right to Free Speech, made actionable by 42 U.S.C. § 1983; tortious interference; negligent supervision, training and retention; and assault.  Plaintiff's constitutional injuries were caused by state actors.

5.     Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. §1331.  Plaintiff's corresponding state law claims arise out of the same core of operative facts and jurisdiction over such claims is vested in this Court under 28 U.S.C. § 1367.

6.     All of the claims arose in and around Oklahoma County, and the Defendants are/were at all relevant times hereto located and/or doing business in such county and may be served in that county.  Oklahoma County is located within the Western District of the United States District Court of Oklahoma, wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

7.     To the extent required, Plaintiff timely filed Charges of Discrimination with the EEOC.  Plaintiff filed his first Charge of Discrimination on or about August 6, 2014.  Plaintiff filed his second Charge of Discrimination on or about October 23, 2014.   This lawsuit is timely filed within ninety (90) days of Plaintiff's receipt of his Right to Sue letters dated February 4, 2015 (received by Plaintiff by mail thereafter).

8.     Plaintiff also timely submitted a governmental tort claim notice on or about October 23, 2014.  Plaintiff received no response, therefore, his tort claims were deemed denied on or about January 28, 2015.  Plaintiff has timely filed this Complaint within one hundred eighty (180) days from the date said tort claim was deemed denied.

## STATEMENT OF FACTS

9.     James, a Black Male, began his employment with the City in or around November 2013 as a Laborer in the Water Department.

10.     James reported to Defendant Scott Smith (who is White), Utilities Supervisor. James' second level supervisor was Defendant Randy Jacox (who is White), Assistant Public Works Director.

11.     Defendant Roger Nelson (who is White), is the City Manager for Defendant City.  In this role, Nelson has the authority to appoint or remove employees of Defendant City.  Nelson may also authorize the head of a department to appoint or remove employees of Defendant City.  Nelson's duties include the supervision and control, directly or indirectly, of all City employees and officers.

12.     As a Laborer, James worked on water lines for the City and was required to take "on call" shifts periodically.  While "on call," James was required to answer an "on call" phone and report to jobs after hours, including nights and weekends.

13.     During his employment, James was subjected to unequal terms and conditions of his employment due to his race.  For instance, James was disciplined for being late to work, but White employees were not similarly disciplined for their tardiness.  And, White employees were given greater increases in pay than James and Cleon Tuggle (a co-worker who is also Black).

14.     Further, James was told by Justin Prince (who is White), a City employee, that Defendant Jacox had made statements that he did not like James and did not want James working on jobs with Tuggle because Black men did not need to work together.

15.     James was also subjected to racial harassment and a racially hostile work

4

environment while employed with the City.  For instance, on or about March 5, 2014, Streets

Laborer Nick (who is White; last name unknown) told James that Nick's daughter's Black

boyfriend was lazy and "a ni**er."  James reported such statement to Defendant Smith who

said he would speak with Defendant Steve Guinn (who is White), Streets Supervisor.

16.     The next morning, James met with Guinn and Streets worker Mike (who is

Black; last name unknown).  During the meeting, Guinn made excuses for Nick, saying that

was just "how Nick is" and he did not mean anything by it.  Guinn further stated that he once

called Mike a "ni**er" when he was frustrated with Mike (Guinn's subordinate) on the job.

Guinn said he  apologized to Mike, who accepted his apology and they both moved on from

it.  Mike confirmed this situation.  James stated that he understood but wanted to know if any

corrective action would be taken against Nick.  Guinn indicated that he would not discipline

Nick for his use of a racial slur.

17.     Thereafter, James reported the use of the term "ni**er" to Defendant Jacox.

Jacox simply stated that he would speak with Nick about the incident and gave no indication

that corrective action would be taken.

18.     Therefore, James reported the incident to City Manager Tracy Jordan (who is

White).  Jordan similarly made excuses for Nick, telling James that Nick was "a little slow"

and offered no resolution for James' concern.

19.     In response, James went back to Jacox with his complaint.  Jacox told James

not to say anything to Nick and that James could not change Nick's opinions.  James was not

informed of any resolution regarding his complaint.

20.     On or about March 12, 2014, Defendant Jacox accused James of hearing that James said James was not going to answer the "on call" phone, although James was, in fact, on call that day.  James denied the allegation.  And, when confronted, the White employee who supposedly told Jacox this false statement, denied making such statement.

21.     On or about March 27, 2014, James was written up for alleged tardiness. James had not previously been disciplined during his employment with the City.  And, on this occasion, James had followed the City's policies regarding calling in to work before being tardy.  Further, other White employees often arrived late or did not show up for work at all, but were not similarly reprimanded.

22.     In or around July 2014, Jacox hired Adam (who is White; last name unknown) as a Crew Leader.  The position was not posted for City employees to apply.  James was often assigned to work with Adam, however, Adam frequently did not appear for work for days at a time with no explanation.

23.     Also, in or around July 2014, several City employees received an increase in pay. While James and Tuggle received a slight increase in pay, other non-Black employees received much larger pay increases.  James and Tuggle were the only Black employees working for the Water Department at that time.

24.     In or around late July 2014, James and other employees were notified at a staff meeting that Adam (the newly hired White Crew Leader) would not be returning and the

Crew Leader position was available.  James asked during the staff meeting whether he or Tuggle would be considered for the position.  Jacox responded that he did not want James or Tuggle in the Crew Leader position, but offered no further explanation.

25.     Defendants then hired Clinton (who is White; last name unknown) for the Crew Leader position.  Clinton was not a current employee of the City when he was hired.

26.     On or about August 6, 2014, James filed an EEOC Charge of Discrimination regarding the use of racial slurs in the workplace, race discrimination, the denial of the Crew Leader position, and retaliation for his complaints of racism.  Tuggle filed an EEOC Charge that day as well.

27.     On or about August 8, 2014, James was written up for alleged poor work performance by Smith and Jacox.  Such discipline was false and merely pretext for unlawful discrimination and retaliation.  For instance, James was accused of not properly fixing a water main in a citizen's yard.  However, the citizen (the former Mayor of Choctaw) submitted a glowing letter to the City thanking James and Tuggle for their hard work on his property that weekend.  And, James could not fix the problem because he was not provided the correct parts by Defendant Smith, although the parts had been requested.

28.     On or about August 27, 2014, James was called into a meeting with Smith and Jacox and told he was being disciplined for missing work the day before without notifying Smith prior to the start of his shift.  This discipline was a further act of discrimination and retaliation due to James' race and complaints of racism.  Particularly, James had informed

Smith that he would be late that day because he had to drop his 8-year-old child off at school, and later notified Smith he would not be able to come into work because his child was ill. And, other White employees, including Adam and Clinton, frequently did not show up for work at all or they would call off after the start of their shift, but these White employees (and others) were not similarly disciplined.

29.     James was also written up that day for allegedly being argumentative and loud during the meeting with Smith and Jacox discussing such discipline.  However, James was not being argumentative, but was merely asking why he was being subjected to discipline when his White co-workers were not disciplined for similar infractions.  In fact, when James asked this question, Defendant Jacox indicated that he had received James' and Tuggle's EEOC Charges of Discrimination and was aware of their complaints.  However, Jacox offered no explanation as to why James was being held to a different standard than his White counterparts, or why James was not given the opportunity to apply for the Crew Leader position.

30.     While discussing his concerns with Jacox and Smith on or about August 27, 2014, Defendant Guinn aggressively inserted himself into the discussion.  Specifically, Guinn quickly advanced toward James, placed himself within inches of James' face, and yelled that James needed to "be quiet" and not question his supervisors.  Guinn then became hostile toward Tuggle, who was standing near the gentlemen during this situation.  Guinn was ultimately separated from the situation after threatening James that he was going to have him

fired.

31.     Later that day, while James was eating lunch at a local restaurant, Guinn aggressively confronted James.   Guinn was yelling and cursing at James in front of customers.  After attempting to calm Guinn down and have a reasonable conversation with him, James became increasingly concerned that Guinn was going to physically harm James. Thus, James walked away from Guinn in an effort to remove himself from the situation.  As he walked away, Guinn threatened that he was not finished with James and that he would find him later in the day.

32.     Upon returning to the water treatment plant from lunch, James told Jacox about Guinn's threatening behavior. Jacox said he would speak with Guinn.   Thereafter, Jacox told James that Guinn was still mad at him, was cussing at Jacox during their discussion, and that James should continue to avoid Guinn.   James asked Jacox whether Guinn would be disciplined for this conduct, but his question was ignored.

33.     Within minutes of this warning, James was again threatened by Guinn, in the presence of Jacox.  Specifically, James was standing in the plant field speaking to Jacox when Guinn drove into the plant yard.  Seeing James in the field, Guinn sped up rapidly in his truck, steering directly toward James.  Based on Guinn's aggressive approach and the threats made earlier in the day, James feared Guinn would either hit James with his truck or exit his truck to start a physical altercation.  However, once Guinn noticed Jacox's presence, Guinn backed his truck away slowly.  James again asked Jacox if he was going to do

something about Guinn's behavior.  Jacox said he would talk to Guinn again.

34.   The next week, on or about September 4, 2014, James was terminated.  Jacox stated the reason for the termination was an alleged argument between James and Crew Leader Mike Billings occurring on or about August 28, 2014.  However, such allegation was false.  In fact, although Jacox stated he conducted an investigation into a complaint from Billings, Jacox did not speak to James about the incident, nor did he speak to Tuggle, who was present during the discussion between Billings and James.

35.   The alleged argument centered around Billings' refusal to take the "on call" phone from James, although James had previously worked Billings' on-call week in exchange for Billings taking the on-call phone for James during his vacation on or about August 29 through September 3, 2014.  The discussion occurred after working hours, and James was not assigned to work with Billings that day.  Ultimately, James took the on call shift even though he was on vacation during the regular work day.

36.   The proffered reason for James' termination was merely pretext for discrimination due to his race, and retaliation due to his complaints (both internal and to the EEOC) of racism.

37.   Following his termination, James filed a grievance regarding his termination.  Thereafter, James' termination was upheld by Defendant Nelson.  Upon information and belief, Nelson was aware of James' complaints on behalf of himself and others, including but not limited to James' EEOC filing, prior to James' termination.

10

38.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - Title VII Race and Retaliation

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

39.     This count goes against Defendant City.

40.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of race discrimination, the creation of a racially hostile work environment, and retaliation.

41.     Plaintiff is entitled to relief under Title VII because he is Black, was qualified for his job, was disciplined and terminated, and his position was not eliminated after his termination.  Moreover, Plaintiff was subjected to racial slurs in the workplace that affected his job in both tangible and intangible ways.  And, he complained about the unfair treatment and harassment he received and was thereafter retaliated against.

42.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

## COUNT II - Title VII Retaliation

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

43.     This count goes against Defendant City only.

44.     The matters alleged above constitute a violation of Title VII of the Civil Rights Act of 1964 for retaliating against Plaintiff for opposing discriminatory practices within the workplace, or filing a Charge of Discrimination with the EEOC and for participating in the EEOC process for himself and Tuggle.

45.     Plaintiff is entitled to relief under Title VII because he engaged in a protected act by lodging internal complaints of race discrimination and filing with the EEOC, he suffered an adverse action, and, as shown above, there is a causal link between the protected act and the adverse action.

46.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

### COUNT III - 42 U.S.C. § 1981 Race and Retaliation

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

47.     This Count goes against all Defendants.

48.     The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination, the creation of a racially hostile work environment, and retaliation.

49.     As damages, Plaintiff has suffered lost earnings, past and future, emotional

distress and other equitable and non-pecuniary losses.

50.     Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT IV - First Amendment Violation

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

51.     This count goes against all Defendants.

52.     The individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of his constitutional right to the freedom of speech. Particularly, during his employment, Plaintiff complained both internally and to the EEOC of discrimination and harassment in the workplace on behalf of himself and another African American employee who was subjected to similar treatment and denial of promotion.  Such complaints were comments on matters of a public concern, speaking as a private citizen, in that Plaintiff complained on behalf of himself and another African American employee. And, Plaintiff's speech exposed Defendants' failure to discharge the City's official duties by engaging in racially discriminatory hiring practices, hiring unqualified candidates for the Crew Leader position and retaining such individuals after numerous attendance violations, inter alia.  Plaintiff was retaliated against following such speech.

53.     Plaintiff's First Amendment right to the freedom of speech was clearly

established at the time of the actions in question.   The actions of Defendants were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, the Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

54.    Such actions have caused lost earnings and a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

55.    Because the actions of the individual Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT V - TORTIOUS INTERFERENCE

For his fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

56.    This Count goes against the individual Defendants.

57.    The acts above-described constitute unlawful tortious interference with a contractual/employment relationship.  Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with the City.  Defendants had no justification, excuse, or privilege for such interference.

58.    As a result, Plaintiff is entitled to all damages allowed by state law.

## COUNT VI -  Negligent Supervision, Training and Retention

For his sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

59.    This Count goes against Defendant City.

14

60.     The acts of Defendant City, as described above, constitute the tort of negligent supervision, training and retention.

61.     Defendant City had a duty to properly supervise and train its employees to refrain from engaging in unlawful discrimination, harassment and retaliation.

62.     Defendant City breached its duty.

63.     At the critical time of the tortious incidents described herein, Defendant knew or should have known that its employees/agents, including but not limited to the individual Defendants, would create an undue risk of harm to others.

64.     As a direct and proximate cause of Defendant City's negligence, Plaintiff was harmed.

65.     As damages, Plaintiff is entitled to all damages allowed by state law.

## COUNT VII - ASSAULT

For his seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

66.     This Count goes against Defendant Guinn.

67.     The acts described above constitute the tort of assault.

68.     As damages, Plaintiff is entitled to all damages allowed by state law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and

15

liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and

such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS <u>10th</u> DAY OF APRIL, 2015.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA# 22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED